# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
      **Plaintiff,**

  v.                                       **Case No. 10-CR-34**

**KELLY WAYNE SMITH**
      **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Kelly Wayne Smith pleaded guilty to distribution of child pornography, contrary to 18 U.S.C. § 2252A(a)(2)(A), and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. At the sentencing hearing, without objection I adopted the PSR's advisory guideline calculations: base offense level 22, U.S.S.G. § 2G2.2(a)(2), plus 2 levels because the offense involved depictions of prepubescent minors, § 2G2.2(b)(2), plus 2 levels for use of a computer, § 2G2.2(b)(6), plus 5 levels based on number of images, § 2G2.2(b)(7)(D), and minus 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 28. Combined with defendant's criminal history category of I, level 28 produced an imprisonment range of 78-97 months. I turned then to imposition of sentence under 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010) ("When sentencing, the district court 'must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a).'") (quoting Nelson v. United States, 129 S. Ct. 890, 891-92 (2009)).

### I. SENTENCING FACTORS

Section 3553(a) directs the sentencing court to consider:

>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>    (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>    (3) the kinds of sentences available;
>
>    (4) the [advisory] sentencing [guideline] range[;]
>
>    (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in § 3553(a)(2). In making this determination, the district court may not presume that a guideline sentence is the correct one. Nelson, 129 S. Ct. at 892. The court is also free to discount the guidelines' recommendation for policy reasons, see, e.g., United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc), particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfil its "characteristic institutional role" of acting based on study, expertise, empirical data, or national experience, see Kimbrough v. United States, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments

of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

## II. DISCUSSION

**A.     The Nature of the Offense**

A detective working in an undercover capacity entered a chat room known to be used by individuals wishing to trade child pornography. A user with a certain screen name, later identified as defendant Kelly Wayne Smith, initiated a chat with the detective, which turned sexual, including regarding the molestation of children. The chats continued over the coming days, with defendant sending the detective images and videos of child pornography.

Law enforcement traced the images to defendant's IP address, obtained a search warrant, and seized his computers. Defendant admitted sending the material to the detective, but the investigation revealed that the children defendant referred to molesting were fictional. An examination of his computers revealed that the images were present and consistent with child pornography. Several of the children depicted were identified, and the court received victim impact letters from them.

**B.     The History and Characteristics of the Defendant**

At age fifty, defendant's prior record was limited to a 2005 drunk driving case, and his background was otherwise positive. He graduated high school and served in the military – two active stints totaling close to twenty years, plus additional time in the reserves, earning numerous awards and commendations. Following his discharge from the service, he worked in product merchandising, traveling a great deal as part of his job. Defendant's current wife remained supportive, and the court received positive letters from his son from a previous marriage, his wife, sister, and father.

3

Defendant also submitted psychological reports from Dr. Charles Lodl and Dr. Michael Kotkin. Dr. Lodl's testing revealed no evidence of a major psychological disorder and a primary sexual interest in adult females. Dr. Lodl thus indicated that defendant's behavior could be explained in two ways. First, after his retirement from the military, defendant experienced boredom, perhaps a misidentification of depressed feelings, which caused him to frequent chat rooms as a social outlet. Second, Dr. Lodl opined that defendant may have a disposition to risk taking behavior or interpersonal game playing, which appeared to have manifested itself in the chats with the detective. Dr. Lodl indicated that, according to the research, men who engaged in on-line sexual misbehavior pose a low risk for a contact offense with a child. Dr. Kotkin likewise indicated that while defendant had sexual chats with persons he met in chat rooms, they never went anywhere. Dr. Kotkin assessed defendant as a relatively honest individual who may have gotten caught up with trading this material for social, as opposed to business reasons, more than any apparent sexual gratification.

The government took issue with the contention that defendant engaged in this conduct for social rather than sexual reasons. I concluded that whatever defendant's precise diagnosis and motivation, it was clear that he behaved unlawfully and needed to be punished, but that the available evidence suggested a low risk of a contact offense with a child. Further evaluation and treatment seemed warranted, as did alcohol treatment, given the indications in the record of excessive drinking.

**C.      The Sentencing Guidelines and Purposes of Sentencing**

The guidelines recommended 78-97 months, and the statute of conviction required a sentence of at least five years. Under all the circumstances, I found a below guideline sentence of 60 months sufficient to satisfy the purposes of sentencing.

4

Due to the flaws in U.S.S.G. § 2G2.2, the guidelines were entitled to little deference in this case. See, e.g., United States v. Dorvee, No. 09-0648, 2010 WL 3023799, at *9-12 (2d Cir. Aug. 4, 2010) (discussing the flaws in this guideline); United States v. Tutty, 612 F.3d 128, 132-33 (2d Cir. 2010) (same); United States v. Diaz, No. 09-CR-302, 2010 WL 2640630, at *3 (E.D. Wis. June 30, 2010) (collecting cases finding the guideline flawed). As explained in detail in other decisions, this guideline is largely the product of congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise. See, e.g., United States v. Manke, No. 09-CR-172, 2010 WL 307937, at *5-6 (E.D. Wis. Jan. 19, 2010); United States v. Phinney, 599 F. Supp. 2d 1037, 1041-43 (E.D. Wis. 2009); United States v. Hanson, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008). The Supreme Court has held that a sentencing judge need not defer to such a guideline. See Kimbrough, 552 U.S. at 109-10.

The guideline's flaws were evident in several specific ways in the present case. Defendant started at a base offense level of 22, a number the Commission selected in an attempt to keep pace with the increased statutory penalties passed by Congress, rather than study or expertise. See Hanson, 561 F. Supp. 2d at 1010. Further, defendant received guideline enhancements for conduct present in virtually all cases – 2 levels for possession of material involving children under age twelve, an enhancement applicable in 94.8% of sentences under § 2G2.2 in fiscal year 2009; 2 levels for use of a computer, applicable 97.2% of the time; and for number of images, applicable 96.6% of the time, with 63.1 % of offenders receiving the full 5 level increase this defendant did. See United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009 36-37. Aside from applying in virtually all cases, these enhancements suffered from additional

5

flaws. As the Sentencing Commission has noted, the use of a computer enhancement fails to distinguish between serious commercial distributors of online pornography and more run-of-the-mill users. As the Commission has also noted, the enhancement is logically flawed because on-line pornography generally comes from the same pool of images found in other formats. See Hanson, 561 F. Supp. 2d at 1009-10. The number of images enhancement is also questionable because, as a result of internet swapping, offenders readily obtain the necessary number of images with minimal effort. In any event, to the extent that the number of images a defendant possesses may serve as a valid proxy for the harm he caused, nearly doubling the sentence likely overstates that harm. As courts have noted, the worldwide market for child pornography is so vast that the relative impact of several hundred additional images is minuscule, yet results in a significant increase in the guideline range. See United States v. Raby, No. 2:05-cr-00003, 2009 WL 5173964, at *7 (S.D. W. Va. Dec. 30, 2009). For these reasons, I gave the guidelines little weight.

The 60 month term required by statute sufficed to satisfy the purposes of sentencing in this case. Defendant's offense was no doubt serious, as the victim statements confirmed, but this lengthy term sufficed to provide just punishment given the nature of defendant's conduct. He was not a commercial distributor or operator of a website dispensing this material. This term also sufficed to deter, as defendant had never before been to prison, and to protect the public, given his minimal record and the testing showing that he posed little risk of a contact offense. He also enjoyed strong and continuing family support, which could assist in his reintegration into the community. Finally, I took into account defendant's attempt to cooperate with law enforcement, meeting with agents and providing information on the on-line activities of others. See United States v. Knox, 573 F.3d 441, 453 (7th Cir. 2009) ("[A]s a general

6

matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion.").

### III. CONCLUSION

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for 60 months, followed by 10 years of supervised release. The guidelines in child pornography cases suggest lifetime supervision, see U.S.S.G. § 5D1.2(b), and the government recommended a life term. However, given defendant's age, the length of the prison term, and the other circumstances of the case, I found a 10 year term sufficient to ensure monitoring. As conditions of supervision, I required defendant to participate in drug and alcohol testing and treatment; imposed restrictions on his computer access and usage; required him to participate in a mental health treatment program; forbid him from possessing sexually explicit material; required him to register with state and local authorities; and required him to provide access to all financial information requested by the supervising probation officer. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge